UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| KAWA ORTHODONTICS LLP, a Florida limited liability partnership, individually and as the representative of a class of similarly-situated persons, | )<br>)<br>)<br>) |
| Plaintiff, | ) Civil Action No: 9:19-cv-80521-DMM |
| v. | ) **CLASS ACTION** |
| LABORATORY CORPORATION OF AMERICA HOLDINGS and LABORATORY CORPORATION OF AMERICA, Delaware corporations, | )<br>)<br>)<br>) |
| Defendants. | ) |

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiff, KAWA ORTHODONTICS LLP ("Plaintiff"), brings this action on behalf of itself and all others similarly situated, through its attorneys, and except as to those allegations pertaining to Plaintiff or its attorneys, which allegations are based upon personal knowledge, alleges the following upon information and belief against Defendants, LABORATORY CORPORATION OF AMERICA HOLDINGS ("LabCorp Holdings") and LABORATORY CORPORATION OF AMERICA ("LabCorp America") (collectively, "Defendants"):

**PRELIMINARY STATEMENT**

1. This case challenges Defendants' practice of sending unsolicited advertisements by facsimile.

2. The federal Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005, 47 U.S.C. § 227 (collectively, "TCPA" or the "Act"), and the regulations promulgated under the Act, prohibit a person or entity from sending fax advertisements without the recipient's "prior express invitation or permission." The TCPA

provides a private right of action and provides minimum statutory damages of $500 per violation.

3. On or about February 6, 2019, Defendants sent Plaintiff an unsolicited fax advertisement in violation of the TCPA (the "February 6, 2019 Fax"), a true and correct copy of which is attached hereto as Exhibit A, and made a part hereof. On or about April 17, 2019, Defendants sent another unsolicited fax advertisement in violation of the TCPA (the "April 17, 2019 Fax"), a true and correct copy of which is attached hereto as Exhibit B, and made a part hereof. Exhibits A and B are collectively referred to herein as the "Faxes."

4. Upon information and belief, Defendants sent the Faxes and other facsimile transmissions of unsolicited advertisements to Plaintiff and the Class in violation of the TCPA. The February 6, 2019 Fax describes the commercial availability or quality of Defendants' property, goods, or services, namely, Defendants' laboratory services. The February 6, 2019 Fax states that "Effective March 1, 2019, LabCorp is the exclusive laboratory provider for WellCare Health Plans, Inc. in Florida," and that "Using an in-network laboratory helps patients maximize their lab benefits and minimize their out-of-pocket expenses." (Exhibit A). The remainder of the February 6, 2019 Fax describes the commercial availability of Defendants' laboratory services and/or the quality of Defendants' laboratory services, and lists numerous related labs associated with LabCorp and the specialty of each. (*Id*. at 2).

5. The April 17, 2019 Fax describes the commercial availability of Defendants' laboratory services and/or the quality of Defendants' laboratory services, stating in part that (i) "LabCorp is committed to helping your practice in using LabCorp for your patients," (ii) "if you are already using LabCorp for all your testing needs, you can continue to do that with no changes necessary," (iii) but, "if your staff needs assistance establishing an account with LabCorp, please contact our customer service team at 1-800-877-5227 and we will assign a LabCorp

2

representative to your practice" who will "assist your office in this transition by setting up an account number, training your team in using LabCorp services, and answering any lab-related question." (Exhibit B).

6. Plaintiff alleges on information and belief that Defendants have sent, and continue to send, unsolicited advertisements via facsimile transmission in violation of the TCPA, including but not limited to the advertisements sent to Plaintiff.

7. Unsolicited faxes damage their recipients. A junk fax recipient loses the use of its fax machine, paper, and ink toner. An unsolicited fax wastes the recipient's valuable time that would have been spent on something else. A junk fax intrudes into the recipient's seclusion and violates the recipient's right to privacy. Unsolicited faxes occupy fax lines, prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, cause undue wear and tear on the recipients' fax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited message.

8. On behalf of itself and all others similarly situated, Plaintiff brings this case as a class action asserting claims against Defendants under the TCPA. Plaintiff seeks to certify a class which were sent the Faxes and other unsolicited fax advertisements that were sent without prior express invitation or permission and without compliant opt-out language (to the extent the affirmative defense of "established business relationship" is alleged). Plaintiff seeks statutory damages for each violation of the TCPA and injunctive relief.

9. Plaintiff is informed and believes, and upon such information and belief avers, that this action is based upon a common nucleus of operative facts because the facsimile transmissions at issue were and are being done in the same or similar manner. This action is based on the same legal theory, namely liability under the TCPA. This action seeks relief expressly authorized by the TCPA: (i) injunctive relief enjoining Defendants, their employees,

3

agents, representatives, contractors, affiliates, and all persons and entities acting in concert with them, from sending unsolicited advertisements in violation of the TCPA; and (ii) an award of statutory damages in the minimum amount of $500 for each violation of the TCPA, and to have such damages trebled, as provided by § 227(b)(3) of the Act in the event the Court determines any TCPA violations were willful or knowing.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

11. This Court has personal jurisdiction over Defendants because Defendants transactbusiness within this judicial district, have made contacts within this judicial district, and/or have committed tortious acts within this judicial district.

## PARTIES

12. Plaintiff, KAWA ORTHODONTICS LLP, is a Florida limited liability partnership.

13. On information and belief, Defendants LabCorp Holdings and LabCorp America are Delaware corporations with their principal place of business in Burlington, North Carolina.

## FACTS

14. On or about February 6, 2019, Defendants sent the February 6, 2019 Fax to Plaintiff using a telephone facsimile machine, computer, or other device. (Exhibit A).

15. The February 6, 2019 Fax announces that "Effective March 1, 2019, LabCorp is the exclusive laboratory provider for WellCare Health Plans, Inc. in Florida." (Exhibit A). The February 6, 2019 Fax states that "Using an in-network laboratory helps patients maximize their lab benefits and minimize their out-of-pocket expenses. (*Id.*). The February 6, 2019 Fax states:

4

> LabCorp and its Specialty Testing Group comprise one of the nation's largest clinical and esoteric laboratory networks. While offering the conveniences and personalized services of a local lab, LabCorp also provides the quality, expertise, innovation, and connectivity solutions of a leading national laboratory provider.

(Exhibit A at 1).

16. The February 6, 2019 Fax advertises laboratory services offered by LabCorp, including the following:

- **Enhanced Test Menu and a Commitment to Scientific Innovation**—A broad test menu and specialized testing laboratories offer you single-source laboratory services. LabCorp's scientific team continually reviews relevant and/or cutting edge diagnostic technology to provide physicians with the most scientifically advanced testing in the industry.

- **Practice Connectivity Expertise**—A variety of testing ordering and result delivery solutions provide the flexibility to meet your needs, including several electronic options:
    - Web-based electronic solutions
    - Bidirectional and Unidirectional Interface: LabCorp has established interface capabilities with more than 700 EMR and PMS systems

- **Flexible Specimen Pick-up**—LabCorp provides courier service for specimens collected in your office. Pick-up schedules can be customized to meet your office needs.

- **Better Patient Access**—LabCorp operates an extensive patient service center network for convenient patient specimen collection.
    - Many locations offer early morning and Saturday hours
    - Online appointment scheduling for additional patient convenience at **Labs & Appointments** on www.LabCorp.com

- **Reliable STAT/Same Day Testing**—LabCorp has local STAT and same day testing capabilities throughout the region.

- **Advanced Anatomic Pathology**—LabCorp, including Integrated Oncology and Dianon, offer full-service subspecialty pathology in the areas of dermopathology, GI, uropathology, hematopathology, breat, ocular and renal pathology, as well as a comprehensive solid tumor analysis program.

(*Id.*)

5

17. The February 6, 2019 Fax further states "For additional information about LabCorp, including a continually updated list of current and new Patient Service Centers and hours of operation, please visit www.LabCorp.com." (*Id.*)

18. The second page of the February 6, 2019 Fax provides at the top of the page the following:

> At LabCorp, our commitment to scientific leadership provides clients with access to industry-leading expertise and the latest developments in medical diagnostics. At the core of LabCorp's approach are its specialized laboratories. Each laboratory has a distinctive, long-standing reputation for innovation and quality.

(Exhibit A at 2).

19. The February 6, 2019 Fax lists the various LabCorp laboratories, advertising the availability or quality of the services each named laboratory provides. (Exhibit A at 2).

20. The February 6, 2019 Fax contains no opt-out notice. (Exhibit A at 1–2).

21. The overwhelming majority of the content of the two-page February 6, 2019 Fax is devoted to advertising the commercial availability of Defendants' lab services or the quality of Defendants' lab services to Plaintiff and the proposed class of recipients.

22. The purpose of the February 6, 2019 Fax was to (i) induce the recipients to recommend Defendants' lab services to all patients, whether or not they are WellCare insureds, (ii) retain current customers (such as WellCare), and (iii) attract new customers, all of which are part of LabCorp's marketing efforts to generate revenue and profit for its laboratory services.

23. On or about April 17, 2019, Defendants sent the February 6, 2019 Fax to Plaintiff using a telephone facsimile machine, computer, or other device. (Exhibit A).

24. The April 17, 2019 Fax announces that "effective March 1, 2019, Laboratory Corporation of America (LabCorp) will become the exclusive provider for WellCare Health Plans Inc. in Florida," and that the "new contract will allow providers access to an expanded

spectrum of services, including LabCorp's broad test menu (visit www.LabCorp.com)." (Exhibit B).

25. The April 17, 2019 Fax further states that LabCorp also "offers a variety of electronic connectivity solutions to assist with test ordering and test results delivery," and that "these connectivity options provide flexibility and range from easy to use, web-based applications to sophisticated integrations." (*Id*.)

26. Finally, the April 17, 2019 Fax states:

> LabCorp is dedicated to a mutual commitment to provide high-quality health care. This commitment is further demonstrated by LabCorp's network of patient service center (PSC) draw sites conveniently located throughout Florida. We are excited about this new opportunity and the benefits it will bring to you and your patients.
>
> LabCorp is pleased to serve all WellCare members and we are committed to helping your practice in using LabCorp for your patients. If you are already using LabCorp for all your testing needs, you can continue to do that with no changes necessary. If your staff needs assistance establishing an account with LabCorp, please contact our customer service team at 1-800-877-5227 and we will assign a LabCorp representative to your practice. Your dedicated LabCorp representative will assist your office in this transaction by setting up account numbers, training your team in using LabCorp services, and answering any lab-related questions.

(Exhibit B).

27. The April 17, 2019 Fax contains no opt out notice. (Exhibit B).

28. The majority of the content of the April 17, 2019 Fax is devoted to advertising the commercial availability or quality of Defendants' lab services to Plaintiff and the proposed class of recipients.

29. The purpose of the April 17, 2019 Fax was to (i) induce the recipients to recommend Defendants' lab services to all patients, whether or not they are WellCare insureds, (ii) retain current customers (such as WellCare), and (iii) attract new customers, all of which are part of LabCorp's marketing efforts to generate revenue and profit for its laboratory services.

7

30. In addition to the outright advertising and marketing of the commercial availability or quality of Defendants' laboratory services, the Faxes also serve as a pretext to advertise Defendants' laboratory services in that the availability or quality of said services are repeatedly advertised in the Faxes in context of an announcement regarding a contract between LabCorp America and WellCare Health Plans, Inc., the purpose of which was to attract and retain customers.

31. Defendants created or made the Faxes, or directed a third party to do so, and the Faxes were sent by or on behalf of Defendants with Defendants' knowledge and authorization.

32. Plaintiff did not give Defendants "prior express invitation or permission" to send the Faxes.

33. On information and belief, Defendants faxed the same and other unsolicited facsimile advertisements without prior express invitation or permission, and without the required opt-out language, thereby precluding the affirmative defense of established business relationship.

34. There is no reasonable means for Plaintiff (or any other class member) to avoid receiving unauthorized fax advertisements. Fax machines are left on and ready to receive the urgent communications their owners desire to receive.

35. The Faxes do not display a proper opt-out notice as required by 47 U.S.C. § 227(b)(1)(C) and 47 C.F.R. § 64.1200(a)(4).

## CLASS ACTION ALLEGATIONS

36. In accordance with Fed. R. Civ. P. 23(b)(3), Plaintiff brings this class action pursuant to the TCPA, on behalf of the following class of persons:

> All persons who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages the same or similar to the Faxes.

Excluded from the Class are Defendants, their employees and agents, and members of the Judiciary. Plaintiff seeks to certify a class which include, but are not limited to, the fax advertisements sent to Plaintiff. Plaintiff reserves the right to amend the class definition upon completion of class certification discovery.

37. <u>Class Size (Fed. R. Civ. P. 23(a)(1))</u>: Plaintiff is informed and believes, and upon such information and belief avers, that the number of persons and entities of the Plaintiff Class is numerous and joinder of all members is impracticable. Plaintiff is informed and believes, and upon such information and belief avers, that the number of class members is at least forty.

38. <u>Commonality (Fed. R. Civ. P. 23(a)(2))</u>:  Common questions of law and fact apply to the claims of all class members. Common material questions of fact and law include, but are not limited to, the following:

(a) Whether the Faxes and other faxes sent during the class period constitute advertisements under the TCPA and its implementing regulations;

(b) Whether each Defendant meets the definition of "sender" for direct TCPA liability, meaning a "person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement," 47 C.F.R. § 64.1200(f)(10);

(c) Whether Defendants had prior express invitation or permission to send Plaintiff and the class fax advertisements;

(d) Whether the Faxes contain an "opt-out notice" that complies with the requirements of § (b)(1)(C)(iii) of the Act, and the regulations promulgated thereunder, and the effect of the failure to comply with such requirements;

(e) Whether Defendants should be enjoined from faxing advertisements in the future;

9

    (f)  Whether Plaintiff and the other members of the class are entitled to statutory damages; and

    (g)  Whether the Court should award treble damages.

  39. <u>Typicality (Fed. R. Civ. P. 23(a)(3))</u>:  Plaintiff's claims are typical of the claims of all class members. Plaintiff received the same or similar faxes as the faxes sent by or on behalf of Defendants advertising the commercial availability or quality of Defendants' property, goods, or services during the Class Period. Plaintiff is making the same claims and seeking the same relief for itself and all class members based upon the same federal statute.  Defendants have acted in the same or in a similar manner with respect to Plaintiff and all the class members by sending Plaintiff and each member of the class the same or similar faxes or faxes which did not contain the proper opt-out language or were sent without prior express invitation or permission.

  40. <u>Fair and Adequate Representation (Fed. R. Civ. P. 23(a)(4))</u>:  Plaintiff will fairly and adequately represent and protect the interests of the class. Plaintiff is interested in this matter, has no conflicts, and has retained experienced class counsel to represent the class.

  41. <u>Predominance and Superiority (Fed. R. Civ. P. 23(b)(3))</u>:  Common questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other methods for the fair and efficient adjudication of the controversy because:

    (a)  Proof of the claims of Plaintiff will also prove the claims of the class without the need for separate or individualized proceedings;

    (b)  Evidence regarding defenses or any exceptions to liability that Defendants may assert and attempt to prove will come from Defendants' records and will not require individualized or separate inquiries or proceedings;

(c) Defendants have acted and are continuing to act pursuant to common policies or practices in the same or similar manner with respect to all class members;

(d) The amount likely to be recovered by individual class members does not support individual litigation. A class action will permit a large number of relatively small claims involving virtually identical facts and legal issues to be resolved efficiently in one proceeding based upon common proofs; and

(e) This case is inherently manageable as a class action in that:

(i) Defendants identified persons to receive the fax transmissions and it is believed that Defendants' and/or Defendants' agents' computers and business records will enable Plaintiff to readily identify class members and establish liability and damages;

(ii) Liability and damages can be established for Plaintiff and the class with the same common proofs;

(iii) Statutory damages are provided for in the statute and are the same for all class members and can be calculated in the same or a similar manner;

(iv) A class action will result in an orderly and expeditious administration of claims and it will foster economics of time, effort, and expense;

(v) A class action will contribute to uniformity of decisions concerning Defendants' practices; and

(vi) As a practical matter, the claims of the class are likely to go unaddressed absent class certification.

### Claim for Relief for Violation of the TCPA, 47 U.S.C. § 227 *et seq.*

42. The TCPA makes it unlawful for any person to "use any telephone facsimile machine, computer or other device to send, to a telephone facsimile machine, an unsolicited advertisement . . . ." 47 U.S.C. § 227(b)(1)(C).

43. The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5).

44. **Opt-Out Notice Requirements.** The TCPA strengthened the prohibitions against the sending of unsolicited advertisements by requiring, in § (b)(1)(C)(iii) of the Act, that senders of faxed advertisements place a clear and conspicuous notice on the first page of the transmission that contains the following among other things (hereinafter collectively the "Opt-Out Notice Requirements"):

(1) A statement that the recipient is legally entitled to opt-out of receiving future faxed advertisements – knowing that he or she has the legal right to request an opt-out gives impetus for recipients to make such a request, if desired;

(2) A statement that the sender must honor a recipient's opt-out request within 30 days and the sender's failure to do so is unlawful – thereby encouraging recipients to opt-out, if they did not want future faxes, by advising them that their opt-out requests will have legal "teeth";

(3) A statement advising the recipient that he or she may opt-out with respect to all of his or her facsimile telephone numbers and not just the ones that receive a faxed advertisement from the sender – thereby instructing a recipient on how to make a valid opt-out request for all of his or her fax machines;

      (4)    The opt-out language must be conspicuous.

The requirement of (1) above is incorporated from § (b)(D)(ii) of the Act. The requirement of (2) above is incorporated from § (b)(D)(ii) of the Act and the rules and regulations of the Federal Communications Commission (the "FCC") in ¶ 31 of its 2006 Report and Order, 21 F.C.C.R. 3787, 2006 WL 901720, which rules and regulations took effect on August 1, 2006). The requirements of (3) above are contained in § (b)(2)(E) of the Act and incorporated into the Opt-Out Notice Requirements via § (b)(2)(D)(ii). Compliance with the Opt-Out Notice Requirements is neither difficult nor costly. The Opt-Out Notice Requirements are important consumer protections bestowed by Congress upon the owners of the telephone lines and fax machines giving them the right, and means, to stop unwanted faxed advertisements.

    45.    **2006 FCC Report and Order.** The TCPA, in § (b)(2) of the Act, directed the FCC to implement regulations regarding the TCPA, including the TCPA's Opt-Out Notice Requirements, and the FCC did so in its 2006 Report and Order, which in addition provides among other things:

      A.    The definition of, and the requirements for, an established business relationship for purposes of the first of the three prongs of an exemption to liability under § (b)(1)(C)(i) of the Act and provides that the lack of an "established business relationship" precludes the ability to invoke the exemption contained in § (b)(1)(C) of the Act (*See* 2006 Report and Order ¶¶ 8-12 and 17-20);

      B.    The required means by which a recipient's facsimile telephone number must be obtained for purposes of the second of the three prongs of the exemption under § (b)(1)(C)(ii) of the Act and provides that the failure to comply with these requirements precludes the ability to invoke the exemption contained in § (b)(1)(C) of the Act (*See* 2006 Report and Order ¶¶ 13-16);

C. The things that must be done in order to comply with the Opt-Out Notice Requirements for the purposes of the third of the three prongs of the exemption under § (b)(1)(C)(iii) of the Act and provides that the failure to comply with these requirements precludes the ability to invoke the exemption contained in § (b)(1)(C) of the Act (*See* 2006 Report and Order ¶¶ 24-34);

46. **The Faxes**. Defendants sent the Faxes on or about February 6 and April 17, 2019, via facsimile transmission from telephone facsimile machines, computers, or other devices to the telephone lines and facsimile machines of Plaintiff and members of the Plaintiff Class. The Faxes constitute advertisements under the Act and the regulations implementing the Act. Defendants failed to comply with the Opt-Out Requirements in connection with the Faxes. The Faxes were transmitted to persons or entities without their prior express invitation or permission and Defendants are precluded from asserting that Defendants had an established business relationship with Plaintiff and other members of the class, because of the failure to comply with the Opt-Out Notice Requirements. By virtue thereof, Defendants violated the TCPA and the regulations promulgated thereunder by sending the Faxes via facsimile transmission to Plaintiff and members of the Class.  Plaintiff seeks to certify a class which includes the Faxes and all others sent during the four years prior to the filing of this case through the present.

47. **Defendants' Other Violations.** Plaintiff is informed and believes, and upon such information and belief avers, that during the period preceding four years of the filing of this Complaint and repeatedly thereafter, Defendants have sent via facsimile transmission from telephone facsimile machines, computers, or other devices to telephone facsimile machines of members of the Plaintiff Class other faxes that constitute advertisements under the TCPA and its implementing regulations that were transmitted to persons or entities without their prior express

invitation or permission and without compliant opt-out notice. By virtue thereof, Defendants violated the TCPA and the regulations promulgated thereunder.

48. The TCPA provides a private right of action to bring this action on behalf of Plaintiff and the Class to redress Defendants' violations of the Act, and provides for statutory damages. 47 U.S.C. § 227(b)(3). The Act also provides that injunctive relief is appropriate. *Id.*

49. The TCPA is a strict liability statute, so Defendants are liable to Plaintiff and the other class members even if their actions were only negligent.

50. Defendants knew or should have known that (a) Plaintiff and the other class members had not given prior express invitation or permission for Defendants or anybody else to send faxes advertising the commercial availability or quality of Defendants' laboratory services; (b) Plaintiff and the other class members did not have an established business relationship; (c) Defendants transmitted advertisements;  (d) the Faxes do not contain the required Opt-Out Notice, thereby precluding the affirmative defense of established business relationship; and (e) Defendants' transmission of fax advertisements without prior express invitation or permission was unlawful.

51. Defendants' actions injured Plaintiff and the other class members. Receiving Defendants' junk faxes caused Plaintiff and the other recipients to lose paper and toner consumed in the printing of Defendants' faxes. Moreover, Defendants' faxes used Plaintiff's and the other class members' telephone lines and fax machines. Defendants' faxes cost Plaintiff and the other class members time, as Plaintiff and the other class members and their employees wasted their time receiving, reviewing, and routing Defendants' unauthorized faxes. That time otherwise would have been spent on Plaintiff's and the other class members' business or personal activities. Defendants' faxes intruded into Plaintiff's and other class members' seclusion and violated their right to privacy, including their interests in being left alone.  Finally, the injury and

property damage sustained by Plaintiff and the other class members from the sending of Defendants' advertisements occurred outside of Defendants' premises.

WHEREFORE, Plaintiff, KAWA ORTHODONTICS LLP, individually and on behalf of all others similarly situated, demands judgment in its favor and against Defendants, LABORATORY CORPORATION OF AMERICA HOLDINGS and LABORATORY CORPORATION OF AMERICA, jointly and severally, as follows:

A. That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B. That the Court award actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater, and that the Court award treble damages of $1,500.00 if the violations are deemed "willful or knowing";

C. That Court enjoin Defendants from additional violations; and

D. That the Court award pre-judgment interest, costs, and such further relief as the Court may deem just and proper.

    Respectfully submitted,

    KAWA ORTHODONTICS LLP, individually, and as the representative of a class of similarly-situated persons

By: /s/ Ross M. Good
Ross M. Good – FL Bar No.: 116405
Ryan M. Kelly – FL Bar No.: 90110
ANDERSON + WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
Telephone: 847/368-1500
Fax: 847/368-1501
rgood@andersonwanca.com
rkelly@andersonwanca.com