# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 9:19-cv-80521-MIDDLEBROOKS/Brannon

KAWA ORTHODONTICS LLP, a Florida limited
liability partnership, individually and as the
representative of a class of similarly-situated persons,

Plaintiff,

v.

LABORATORY CORPORATION OF AMERICA
HOLDINGS and LABORATORY CORPORATION
OF AMERICA, Delaware corporations,

Defendants.

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT AND SUPPORTING MEMORANDUM OF LAW

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS ..............................................................................................2

     A.    The Parties ..............................................................................................2

     B.    Managed Medicaid and WellCare ............................................................2

     C.    WellCare's Exclusive In-Network Agreement with LabCorp ..................3

     D.    Plaintiff's Allegations Regarding the Notification To WellCare Providers of LabCorp's Exclusive In-Network Status Change ...........................4

     E.    Plaintiff's Claim .....................................................................................5

ARGUMENT ...............................................................................................................6

I.     STANDARD OF REVIEW ......................................................................................6

II.    PLAINTIFF FAILS TO STATE A CLAIM BECAUSE THE FAXES ARE NOT ADVERTISEMENTS ..............................................................................7

     A.    The Faxes Do Not Attempt to Sell Anything ...........................................8

     B.    The Faxes Were Informational ...............................................................10

     C.    Plaintiff Cannot Mischaracterize the Faxes as Advertising ....................12

     D.    Plaintiff Cannot Rely on Speculative Benefits LabCorp Received from the Faxes ....................................................................................14

     E.    The Faxes Are Not a Pretext for a Larger Advertising Scheme ..............16

CONCLUSION ............................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Absolute Health Ctr., Inc. v. Multiplan, Inc.*,
   No. 15-cv-01624-RB-NYW, 2016 WL 7868822 (D. Colo. Sept. 21, 2016) ...........................9

*Ameriguard, Inc. v. Univ. of Kan. Med. Ctr. Research Inst., Inc.*,
   No. 06-0369-CV-W-ODS, 2006 WL 1766812 (W.D. Mo. June 23, 2006)............................8

*ARcare v. IMS Health, Inc.*,
   No. 2:16CV00080 JLH, 2016 WL 4967810 (E.D. Ark. Sept. 15, 2016)................................8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).......................................................................................................6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).......................................................................................................6

*Bristol-Myers Squibb Co. v. Superior Court of California*,
   137 S. Ct. 1773 (2017)..................................................................................................6

*Day v. Taylor*,
   400 F.3d 1272 (11th Cir. 2005) ...............................................................................4, 7

*Florence Endocrine Clinic, PLLC v. Arriva Med., LLC*,
   858 F.3d 1362 (11th Cir. 2017) ............................................................................7, 8, 9

*Griffin Indus., Inc. v. Irvin*,
   496 F.3d 1189 (11th Cir. 2007) ....................................................................................7

*Holmes v. Back Doctors, Ltd.*,
   Case No. 09-540, 2009 WL 3425961 (S.D. Ill. Oct. 21, 2009) ..........................7, 13

*Mauthe v. National Imaging Associates, Inc.*,
   ---Fed. Appx. ----, 2019 WL 1752591 (3d Cir. Apr. 17, 2019) .................................8

*Mauthe v. Spreemo, Inc.*,
   No. 18-1902, 2019 WL 342715 (E.D. Pa. Jan. 28, 2019)......................10, 11, 16, 17

*N.B. Indus. v. Wells Fargo & Co.*,
   No. C 10-03203 LB, 2010 WL 4939970 (N.D. Cal. Nov. 30, 2010) ...............12, 13

*P&S Printing LLC v. Tubelite, Inc.*,
   No. 3:14–cv–1441 (VAB), 2015 WL 4425793 (D. Conn. July 17, 2015).........7, 13

*PDR Network, LLC v. Carlton & Harris Chiropractic*,
    --- S. Ct. ----, 2019 WL 2527470 (June 20, 2019) ...................................................................13

*Phillip Long Dang, D.C. P.C. v. XL Health Corp.*,
    No. 1:09-CV-1076-RWS, 2011 WL 553826 (N.D. Ga. Feb. 7, 2011) .....................................8

*Physicians Healthsource, Inc. v. Janssen*,
    No. 12-2132 (FLW), 2013 WL 486207 (D.N.J. Feb. 6, 2013) ........................12, 13, 14, 15, 16

*Physicians Healthsource, Inc. v. Multiplan Servs., Corp*,
    No. 12-11693-GAO, 2013 WL 5299134 (D. Mass. Sept. 18, 2013) ........................................9

*Practice Mgmt. Support Svs., Inc. v. Cirque du Soleil, Inc.*,
    301 F. Supp. 3d 840 (N.D. Ill. 2018) .......................................................................................6

*Robert Mauthe, M.D., P.C. v. Optum, Inc.*,
    No. 17-1643, 2018 WL 3609012 (E.D. Pa. July 27, 2018) .............................................14, 16

*Roy v. FedEx Ground Package Sys., Inc.*,
    353 F. Supp. 3d 43 (D. Mass. 2018) .........................................................................................6

*Sandusky Wellness Center, LLC v. Medco Health Solutions, Inc.*,
    788 F.3d 218 (6th Cir. 2015) .......................................................................8, 10, 11, 14, 16

*Southeast Laborers Health and Welfare Fund v. Bayer Corp.*,
    655 F. Supp. 2d 1270 (S.D. Fla. 2009) .....................................................................................6

**Statutes**

47 U.S.C. § 227.............................................................................................................................1, 7, 8

Fla. Stat. §§ 409.961-409.985 (July 1, 2012).......................................................................................3

**Other Authorities**

47 C.F.R. § 64.1200 ..........................................................................................................................7, 8

*Medicaid and Children's Health Ins. Program (CHIP) Programs; Medicaid
    Managed Care, CHIP Delivered in Managed Care, and Revisions Related to
    Third Party Liability*, 81 Fed. Reg. 27498 (May 6, 2016)....................................................2, 3

*Rules and Regulations Implementing the Telephone Consumer Protection Act of
    1991*; *Junk Fax Prevention Act of 2005*, 71 Fed. Reg. 25967 (May 3, 2006) ............12, 13 ,16

Fed. R. Civ. P. 10(c) ...........................................................................................................................7

Fed. R. Civ. P. 12(b)(6)....................................................................................................................1, 6

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Laboratory Corporation of America Holdings and Laboratory Corporation of America (together, "Defendants" or "LabCorp") respectfully submit this Motion to Dismiss Plaintiff's First Amended Class Action Complaint ("FAC") and Supporting Memorandum of Law ("Motion").

## PRELIMINARY STATEMENT

Plaintiff, Kawa Orthodontics LLP ("Plaintiff"), seeks monetary damages on behalf of itself and a putative class under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq*. Plaintiff's claim is predicated on two facsimiles that it received from LabCorp (the "Faxes"), informing Plaintiff that LabCorp was now the exclusive in-network provider of laboratory testing services for all patients insured by WellCare Health Plans, Inc. ("WellCare"). In other words, the Faxes advised Plaintiff that if it sent WellCare patients to another laboratory services provider, those patients would not have health insurance coverage for such laboratory testing.

The Faxes do not fall within the scope of the TCPA because they do not promote the sale of any goods or services to Plaintiff—a threshold requirement for liability to attach. Indeed, under LabCorp's contract with WellCare, LabCorp receives a prospective, fixed fee per month regardless of the volume of testing it provides. Thus, WellCare already purchased these services for its members and there was nothing about the Faxes that promoted or effectuated further sales. Accordingly, the purpose of the Faxes was informational, not advertising.

Courts have consistently held that when a fax alerts a medical provider of changes regarding insurance coverage, it does not violate the TCPA. Here, the Faxes served a critical informational purpose: it notified Plaintiff, a medical provider, of an important coverage change to a major Florida Medicaid managed care organization. This information minimized the risk

that Plaintiff might refer a patient to other laboratories for uncovered services, which would result in additional costs to patients and the Medicaid program.

Realizing that the Faxes are informational, Plaintiff pleads conclusory statements to characterize the Faxes as advertising. But the law is well established that a plaintiff cannot convert an informational message into advertising by exaggerating the promotional nature of identifying information contained in a fax. Plaintiff also cannot survive a motion to dismiss by attempting to manufacture a list of speculative benefits that LabCorp received from the Faxes—a theory multiple courts have also rejected. Indeed, such allegations are implausible. The Faxes notified Plaintiff of LabCorp's contract with WellCare. Under that contract LabCorp is paid a fixed monthly fee. The Faxes did not promote the sale of any services because LabCorp's services for all WellCare members in the State of Florida were already bought and paid for.

Because the Faxes at issue were not advertisements, the TCPA does not apply and Plaintiff's FAC should be dismissed.

## STATEMENT OF FACTS

### A.    The Parties

Plaintiff is a Florida limited liability partnership, located in Boca Raton, Florida. FAC ¶ 12. Plaintiff provides orthodontic care. https://www.braces1.com/#dr-larry-kawa-the-underwater-orthodontic-office-in-boca-raton.

LabCorp is a Delaware corporation, headquartered in Burlington, North Carolina, that provides, *inter alia*, comprehensive clinical laboratory services. FAC ¶ 13.

### B.    Managed Medicaid and WellCare

Until the early 1990s, most Medicaid beneficiaries received Medicaid coverage through "fee-for-service" arrangements. *See Medicaid and Children's Health Ins. Program (CHIP) Programs; Medicaid Managed Care, CHIP Delivered in Managed Care, and Revisions Related*

*to Third Party Liability*, 81 Fed. Reg. 27498, 27500 (May 6, 2016).  Since then, states have increasingly relied on managed care arrangements to administer care to Medicaid enrollees.  *Id.* Under these "managed Medicaid" arrangements, states contract with managed care organizations ("MCOs"), which are responsible for providing covered services to enrollees.  *Id.*  The state pays the MCOs a fixed, prospective, monthly payment per enrolled beneficiary, referred to as a "capitated" fee.  *Id.*  In exchange for this capitated fee, the MCOs are responsible for maintaining a network of healthcare providers sufficient to deliver a specified package of Medicaid services. *Id.* at 27658-64.  Thus, MCOs enter into contracts with healthcare providers to provide services to the MCOs' members.  *Id.*  The MCOs' members then visit these "in-network" providers to receive covered healthcare services.  *Id.*

Florida has adopted the managed Medicaid model, and most Florida Medicaid enrollees now receive services through this model.  *See* Fla. Stat. §§ 409.961-409.985 (July 1, 2012); *see also*  http://ahca.myflorida.com/Medicaid/statewide_mc/ ("The Agency for Health Care Administration ["AHCA"] is responsible for administering the Statewide Medicaid Managed Care (SMCC) program.  Most Florida Medicaid recipients are enrolled in the SMMC Program").  WellCare is an MCO for Florida managed Medicaid and offers managed Medicaid plans under the name "Staywell," among others.  *See* FAC, Exs. A & B (listing the Staywell and other plans). Thus, Florida pays WellCare a prospective, monthly capitated fee for each WellCare plan member, and WellCare contracts with healthcare providers, like LabCorp, to serve its members.

### C.    **WellCare's Exclusive In-Network Agreement with LabCorp**

As of March 1, 2019, LabCorp became the exclusive in-network provider of clinical laboratory services for all WellCare managed Medicaid and other plans.  *See* FAC, Exs. A & B (notifying providers that LabCorp is now the exclusive provider of laboratory services for WellCare members); *see also* Ex. 1, Amendment to Participating Provider Agreement (the

"Amendment").[1]   WellCare pays LabCorp for its services on a capitated basis, *i.e.,* LabCorp receives a prospective, monthly per-member-per-month fee. *See* Ex. 1, Amendment, Attachment C ¶¶ 1.2 & 1.3.[2]   With limited exceptions, this fee does not vary with the volume of testing LabCorp performs. *Id.*   In other words, LabCorp receives the same compensation from WellCare regardless of how many tests it performs or how many WellCare members it serves. Whether LabCorp performs one hundred tests on a patient, or none, it will be compensated the same amount from WellCare.

Because LabCorp is the exclusive in-network provider of laboratory services for WellCare members, other clinical laboratories are "out of network" for WellCare members. *Id.* at ¶ 1.1.   The capitated arrangement WellCare negotiated with LabCorp does not apply to services provided by other clinical laboratories. *Id.*   As a practical matter, this means that if a physician refers a WellCare member to a non-LabCorp laboratory for testing, both the member and the Florida Medicaid plan may incur additional costs. *See Third–Party Liability Requirements*, Fla. Admin. Code r. 59G-1.052.

D.   **Plaintiff's Allegations Regarding the Notification To WellCare Providers of LabCorp's Exclusive In-Network Status Change**

According to the FAC, LabCorp sent fax notifications to Plaintiff on February 6, 2019 ("February Fax") and April 17, 2019 ("April Fax") (together, the "Faxes"). FAC ¶ 3.   The February Fax was titled an "Important Laboratory Reminder" and informed Plaintiff that "[e]ffective March 1, 2019, LabCorp is the exclusive laboratory provider for Wellcare Health

---

[1] Attached hereto as Exhibit 1 is an excerpted copy of the Amendment to the Participating Provider Agreement between WellCare and LabCorp.  Exhibit 1 has been redacted to include only information relevant to Plaintiff's allegations and the arguments set forth in this Motion and to protect highly sensitive confidential pricing and business information.  The Court should consider the Amendment when deciding this Motion because it is (1) central to Plaintiff's claim and (2) undisputed. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

[2] See also http://ahca.myflorida.com/Medicaid/statewide_mc/pdf/mma/SMMC_Plans_by_Region.pdf (AHCA listing of Florida managed Medicaid plans, including Staywell).

Plans, Inc." *Id.*, Ex. A. The February Fax informed Plaintiff that using an in-network lab "helps patients maximize their lab benefits and minimize their out of pocket expenses." *Id.* It then listed the LabCorp services available to members of WellCare (not Plaintiff, which is a healthcare provider) now that LabCorp was the exclusive in-network clinical laboratory for their health plan. *Id.*, Ex. A.

The April Fax announced to "Valued Client[s]" of LabCorp that LabCorp was the exclusive laboratory provider for WellCare. FAC, Ex. B. It informed providers of the services available to them under the "new contract" and provided them with helpful information regarding the "transition" to LabCorp for their patients that are "WellCare members." *Id.* Indeed, the April Fax provided a customer service phone number for providers to call to have a customer service representative "assist . . . in th[e] transition by setting up an account number, training [the customer's] team in using LabCorp services, and answering any lab-related questions." *Id.*, Ex. B.

Both Faxes confirm that WellCare had already chosen LabCorp as the exclusive provider of laboratory services for its members. FAC, Exs. A & B. The Faxes do not contemplate a situation in which a healthcare provider may choose to recommend LabCorp for laboratory services to patients with WellCare coverage. Indeed, patients with WellCare coverage ***must*** visit a LabCorp laboratory if the patient does not wish to pay for laboratory services out-of-pocket. *Id.*, Exs. A & B.

### E.     Plaintiff's Claim

Plaintiff asserts a single generic cause of action for alleged violations of the TCPA, claiming that the Faxes "advertis[e] the commercial availability . . . or the quality of [LabCorp]'s lab services," and that they were sent without Plaintiff's "prior express invitation or permission."

FAC ¶¶ 21, 28, 32.  Plaintiff seeks to represent a nationwide class of individuals that it alleges also received the Faxes.[3]  *Id.*, ¶¶ 8 & 36.

**ARGUMENT**

**I.      STANDARD OF REVIEW**

To survive this Motion, Plaintiff's FAC must set forth factual allegations that provide more than just "labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." *Id.*  On a Rule 12(b)(6) motion, the court must "view the complaint in the light most favorable to the plaintiff and take its well-pled factual allegations as true." *Southeast Laborers Health and Welfare Fund v. Bayer Corp.*, 655 F. Supp. 2d 1270, 1274 (S.D. Fla. 2009) (Middlebrooks, J.).  A complaint, must be dismissed, however, when it does not contain sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).  For a claim to be "plausible," plaintiff must plead facts that permit "the reasonable inference that the defendant is liable for the misconduct alleged," not just a "mere possibility of misconduct." *Id.* at 678-79.  The factual allegations in the complaint "'must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true.'" *Southeast Laborers Health*, 655 F. Supp. 2d at 1275 (quoting *Twombly*, 550 U.S. at 555).

---

[3] Given the absence of any basis for the existence of general jurisdiction, LabCorp reserves the right to challenge the exercise of specific jurisdiction over it with respect to claims asserted by putative class members that are not residents of Florida.  *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773, 1780 (2017) (specific jurisdiction requires "an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation") (quotation omitted); *Roy v. FedEx Ground Package Sys., Inc.*, 353 F. Supp. 3d 43, 58 (D. Mass. 2018) (*Bristol-Myers* "effectively point[s] towards an intent to limit nationwide class actions to forums with general jurisdiction over defendants") (citing Newberg on Class Actions § 6.26 (5th ed. 2011-2018); *Practice Mgmt. Support Svs., Inc. v. Cirque du Soleil, Inc.*, 301 F. Supp. 3d 840, 864 (N.D. Ill. 2018) ("Because . . . nonresidents' claims do not relate to defendants' contacts with Illinois, exercising specific personal jurisdiction over defendants with respect to them would violate defendants' due process rights.").

A copy of any written instrument that is attached as an exhibit to the complaint (such as the Faxes) becomes a part of the complaint for all purposes.  Fed. R. Civ. P. 10(c).  When an exhibit contradicts the allegations of the complaint, the exhibit controls.  *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007).  Similarly, the Court may consider the Amendment for purposes of this Motion because it is (1) central to Plaintiff's claim and (2) undisputed.  *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

The purpose of the Faxes was to notify Plaintiff of the Amendment, which designated LabCorp as the exclusive laboratory provider for WellCare members.  Thus, the Amendment is central to Plaintiff's claims that the Faxes are "advertising the commercial availability . . . or the quality of Defendants' lab services" and that the purpose of the Faxes was to "generate revenue and profit for its laboratory services."  FAC ¶¶ 21, 22, 28, 29.

## II.   PLAINTIFF FAILS TO STATE A CLAIM BECAUSE THE FAXES ARE NOT ADVERTISEMENTS

The TCPA, as amended by the Junk Fax Prevention Act of 2005, prohibits only certain faxed communications.  "[I]t is not the purpose of the TCPA to prohibit all fax communications between businesses, and indeed Congress could not prohibit all such communications without violating the First Amendment."  *Holmes v. Back Doctors, Ltd.,* Case No. 09-540, 2009 WL 3425961, at *4 (S.D. Ill. Oct. 21, 2009), *vacated in part on other grounds*, 695 F. Supp. 2d 843 (S.D. Ill. 2010).  The TCPA regulates the transmission by fax of "unsolicited advertisements" only.  47 U.S.C. § 227(b)(1)(C); 47 C.F.R. § 64.1200(a)(4).

If the Faxes are not "advertisements," then Plaintiff has failed to state a claim under the TCPA.  *Florence Endocrine Clinic, PLLC v. Arriva Med., LLC*, 858 F.3d 1362, 1366-67 (11th Cir. 2017) (affirming dismissal of complaint on the ground that fax at issue was not advertising); *P&S Printing LLC v. Tubelite, Inc.*, No. 3:14–cv–1441 (VAB), 2015 WL 4425793, at *3 (D.

7

Conn. July 17, 2015) (dismissing complaint based upon content of the fax attached to the pleading); *Ameriguard, Inc. v. Univ. of Kan. Med. Ctr. Research Inst., Inc.*, No. 06-0369-CV-W-ODS, 2006 WL 1766812, at *1 (W.D. Mo. June 23, 2006) (same).  Here, Plaintiff's claim should be dismissed because the Faxes are not advertisements in that (i) they do not attempt to sell any LabCorp services; (ii) they are informational; and (iii) they are not pretext for a larger advertising scheme.

### A.      The Faxes Do Not Attempt to Sell Anything

The TCPA defines an unsolicited advertisement as: "[A]ny material advertising the commercial availability or quality of any property, goods, or service which is transmitted to a person without that person's express invitation or permission, in writing or otherwise."   47 U.S.C. § 227(a)(5); 47 C.F.R. § 64.1200(f)(15).   Under Eleventh Circuit law, to fall within the TCPA, a fax must draw attention to the commercial availability or quality of a service or product in order to promote its sale.  *Florence Endocrine*, 858 F.3d at 1366.  This means that the Faxes must have been sent "from the point of view of profit," to promote the availability or quality of something available to be bought or sold.  *Sandusky Wellness Center, LLC v. Medco Health Solutions, Inc.*, 788 F.3d 218, 224 (6th Cir. 2015); *see also Mauthe v. Nat'l Imaging Assoc., Inc.*, 767 F. App'x 246, 2019 WL 1752591, *2 (3d Cir. Apr. 17, 2019) ("[T]he fax must convey the impression to its recipient that a seller is trying to make a sale to him.").[4]

In *Florence Endocrine*, the Eleventh Circuit concluded that a fax sent by a seller of medical devices to the purchaser's doctor for insurance purposes did not qualify as an unsolicited

---

[4] *See also Phillip Long Dang, D.C. P.C. v. XL Health Corp.*, No. 1:09-CV-1076-RWS, 2011 WL 553826, at *4 (N.D. Ga. Feb. 7, 2011) (fax not an advertisement because there was "nothing on the communication which seeks to sell insurance to the recipient" of the fax); *ARcare v. IMS Health, Inc*., No. 2:16CV00080 JLH, 2016 WL 4967810, at *3 (E.D. Ark. Sept. 15, 2016) (motion to dismiss granted where complaint alleged only that fax informed recipient that defendant's services are commercially available, but did not indicate what services were available for purchase to plaintiff); *see also Ameriguard*, 2006 WL 1766812, at *1 (fax not an advertisement where it did not suggest anything "commercial").

advertisement because the fax did not promote the sale of the defendant's goods.  858 F.3d at 1367.  Rather, the fax requested information only to help complete an order that was already made.  *Id*.  Importantly, the Eleventh Circuit noted that the plaintiff did not allege that the faxes were intended to induce the doctors that received the faxes to prescribe defendant's products to other patients that had not already purchased them, or to induce the doctors themselves to purchase the products.  *Id*.  Thus, it concluded, that the faxes did not "promote the sale" of defendant's product.  *Id*.

Similar to the fax in *Florence Endocrine*, the Faxes here were not "advertisements" because they did not promote the sale of LabCorp's services, and they were not sent from the point of view of profit.  Both the Faxes themselves and the context in which they arose confirm that they were not sent to promote the sale of LabCorp's services.  On their faces, the Faxes informed Plaintiff that LabCorp is the exclusive in-network laboratory for members of WellCare plans.  WellCare pays LabCorp a prospective, monthly capitated fee.  Under this arrangement, WellCare *already contracted and paid for* LabCorp's services, including services LabCorp may provide to Plaintiff's patients.  *See* Ex. 1, Amendment, Attachment C.  Just like in *Florence Endocrine*, the Faxes provide information about a transaction that has already been completed and for which payment was already made.  *See Florence Endocrine*, 858 F.3d at 1367 (faxes do not "promote the sale" of any product because they were sent in connection with "orders already placed by patients of those physicians").[5]   Because the Faxes did not attempt to sell any LabCorp service, they were not "advertisements."

---

[5] *See also Physicians Healthsource, Inc. v. Multiplan Servs.*, Corp., No. 12-11693-GAO, 2013 WL 5299134, at *1-2 (D. Mass. Sept. 18, 2013) (fax not advertising when sent to physician practicing at plaintiff to inform him of services already available to him as a member of healthcare preferred provider network); *Absolute Health Ctr., Inc. v. Multiplan, Inc.*, No. 15-cv-01624-RB-NYW, 2016 WL 7868822, at *6 (D. Colo. Sept. 21, 2016) (noting that it is impossible for a defendant to be advertising a service when that service is not available given that it is already being provided for a third party).

Nor were the Faxes sent "from the point of view of profit." *Sandusky Wellness Center*, LLC, 788 F.3d at 224. As explained above, LabCorp receives a capitated fee from WellCare that is not dependent on how many laboratory tests LabCorp provides to WellCare members. *See* Ex. 1, Amendment, Attachment C ¶¶ 1.2 & 1.3. The more WellCare members are sent to LabCorp laboratories for services, the more LabCorp spends to deliver those services, while its payments from WellCare remain exactly the same. In other words, the Faxes do the exact opposite of increasing LabCorp's profit. To the extent they promoted LabCorp's services, the Faxes actually decreased LabCorp's profits. Under *Sandusky* and similar authority, the Faxes were not sent "from the point of view of profit," and therefore were not advertisements.

**B.    The Faxes Were Informational**

The Faxes independently fail to qualify as "advertisements" because they are informational—specifically, they informed Plaintiff of a recent development in WellCare's coverage for patients insured by WellCare. FAC, Exs. A & B. The Faxes provide Plaintiff, a medical services provider, with important information affecting its patients' insurance coverage. *Id.*

The Faxes are similar to the one at issue in *Mauthe v. Spreemo, Inc.*, where the Eastern District of Pennsylvania recently held that a fax was informational under the TCPA. No. 18-1902, 2019 WL 342715, *2-3 (E.D. Pa. Jan. 28, 2019). In *Spreemo*, the fax informed medical services providers that the defendant had been designated by a certain insurance company as the primary diagnostic testing vendor for its insureds. *Id.* at *2.

Similarly, in *Sandusky*, the Sixth Circuit concluded that a fax containing a list of plan-preferred medications was sent with the primary purpose of informing healthcare providers

which medications are covered by their patients' healthcare plans.[6]  788 F.3d at 219, 223.  The court noted that while the fax at issue called defendant's items and services to plaintiff's attention, it was not done in the commercial sense, with the hopes of making a profit, directly or indirectly, from plaintiff.  *Id.* at 222.  Indeed, as the court noted, the record showed no evidence that defendant sought to solicit any business from plaintiff.  *Id.*  Thus, the fax was informational, and not subject to the TCPA.  *Id.*

These faxes are nearly identical to the Faxes here, which inform recipients—medical providers—that LabCorp has been designated by WellCare as its exclusive laboratory services provider for any patients with WellCare coverage.  Like the faxes in *Spreemo* and *Sandusky*, the Faxes are informational faxes and are not advertisements under the TCPA.  The Faxes are not directed to the consumers of any of LabCorp's services, only to a third party like Plaintiff, who needed to be informed about an important change in its patients' insurance coverage.  Not only is Plaintiff not the expected user of LabCorp's services, it is not even in a position where it is expected to recommend LabCorp's services because WellCare already decided that LabCorp is its exclusive provider of laboratory services.

Informational faxes, like the Faxes, provide a significant public benefit.  Without the information in the Faxes, chances are a medical services provider will refer a patient with WellCare coverage to an out-of-network laboratory service provider.  An out-of-network laboratory would then bill the patient or Medicaid for the services, and the cost would ultimately fall on the patient or on Florida's Medicaid plans.

---

[6] Although *Sandusky* was decided in the context of summary judgment, rather than a motion to dismiss, the reasoning applies with equal force here, given the similarities between the at-issue faxes on their face.

### C.      Plaintiff Cannot Mischaracterize the Faxes as Advertising

Plaintiff attempts to convert the Faxes to advertising by alleging that references to LabCorp's services "advertis[e] the availability or quality of the services each [] laboratory provides" and that the Faxes "advertis[e] the commercial availability . . . or quality of [LabCorp]'s lab services."  FAC ¶¶ 19, 21 28.  This effort fails.

"Incidental" advertising on an otherwise informational fax is not sufficient to "convert the entire communication into an advertisement."  *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*; *Junk Fax Prevention Act of 2005* ("FCC Guidance"), 71 Fed. Reg. 25967, 25973 (May 3, 2006); *see also Physicians Healthsource, Inc. v. Janssen*, No. 12-2132 (FLW), 2013 WL 486207, at *1 (D.N.J. Feb. 6, 2013) (holding that the faxes were not actionable under the TCPA where they were "indeed informational and . . . include[d] only an incidental amount of commercial material"); *N.B. Indus. v. Wells Fargo & Co.*, No. C 10-03203 LB, 2010 WL 4939970, at *7 (N.D. Cal. Nov. 30, 2010) ("incidental advertisement" in an otherwise "information" message does not convert communication into an advertisement).  Thus, a company logo or business slogan on a fax would not convert the communication into an advertisement, so long as the primary purpose of the communication is to relay information.  *See* FCC Guidance, 71 Fed. Reg. at 25973.

Plaintiff points to the fact that the Faxes identify the services that LabCorp provides and the availability of those services.  FAC ¶¶ 16, 19, 25, 26, 30.  But MCOs are required to provide certain services to Medicaid recipients.  Thus, the list of services provided by LabCorp and its affiliated laboratories reinforces the Faxes' purpose to inform medical providers of the services for which they must refer WellCare members to LabCorp.  FAC, Exs. A & B.  Moreover any identifying information in the Faxes is incidental to the primary purpose of the Fax, which was to

inform medical services providers of changes in the coverage for individuals with WellCare plans. *See Janssen*, 2013 WL 486207, at *5; *N.B. Indus.*, 2010 WL 4939970, at *7.

The FCC has enumerated certain factors to consider when determining whether the amount of advertising is incidental to a primary informational purpose.[7]  The factors include: whether the information is issued on a regular schedule, whether the text of the communication changes from issue to issue, and whether the communication is targeted at specific regular recipients.  *See* FCC Guidance, 71 Fed. Reg. at 25973.  The FAC is devoid of any facts that address any of these factors.  However, the text of the Faxes makes clear that the language in the Faxes is not static—it is specific to a recent development.  FAC, Ex. A (entitled "Important Laboratory Reminder"); FAC, Ex. B ("We are pleased to announce . . . [LabCorp] will become the exclusive laboratory provider for WellCare.").  The Faxes also make clear that they are directed at medical services providers, that are "Valued Client(s)" of LabCorp, treating patients that are WellCare members to "help[] patients maximize their lab benefits and minimize their out-of-pocket expenses."  FAC, Exs. A & B; *see also P&S Printing LLC*, 2015 WL 4425793, at* 4-5 (applying FCC's factors to fax informing recipient of sender's change in schedule and concluding that fax's primary purpose, on its face, was informational because updates on delivery schedule by their nature change each time they are sent and generally target current customers, not new ones); *see also Holmes*, 2009 WL 3425961, at *4 (finding faxes that were of interest to the recipient and informational were not advertisements even though they contained some commercial material).  The FCC's factors confirm that the Faxes were informational.

---

[7] The Supreme Court recently considered the issue of whether the FCC Guidance is binding on district courts.  *See PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, --- S. Ct. ----, 2019 WL 2527470, at *3 (June 20, 2019). The Court vacated the Fourth Circuit's ruling, which concluded that the district court erred by offering its own interpretation of the "advertisement" required under the TCPA and remanded the case for further consideration.  *Id.* at *4.  Accordingly, the deference this Court owes to the FCC Guidance is currently unsettled.

### D.   **Plaintiff Cannot Rely on Speculative Benefits LabCorp Received from the Faxes**

Finally, Plaintiff also pleads that the purpose of the Faxes was to "generate revenue and profit for its laboratory services" by "(i) induc[ing] the recipients to recommend Defendants' lab services to all patients, whether or not they are WellCare insureds," "(ii) retain[ing] current customers (such as WellCare)," and "(iii) attract[ing] new customers."  FAC ¶¶ 22 & 29.  The Court should disregard this implausible and conclusory allegation.  The Faxes were sent to inform Plaintiff of a change to the in-network laboratory services available to WellCare members.  Any commercial benefit LabCorp may ultimately receive from the Faxes is incidental and speculative, and cannot support a TCPA claim.

The appropriate inquiry under the TCPA is whether the Faxes are advertisements tending to propose a commercial transaction, not whether there is some ancillary commercial benefit to either party.  *Janssen*, 2013 WL 486207, at *4.  The court in *Janssen* held that a fax notifying recipients about the reclassification of a drug for insurance purposes was informational, and any commercial benefit to the defendants from sending this type of information to prescribing doctors was too tenuous to make it an unsolicited advertisement.  *Id.*  Similarly, in *Sandusky*, the court noted that the faxes at issue did not seek any actual or potential commercial transaction with the plaintiff, and the fact that defendants might benefit "down the stream" could not convert the fax into an advertisement. 788 F.3d at 225  ("The fact that the sender might gain an ancillary, remote, and hypothetical economic benefit later on does not convert a noncommercial, informational communication into a commercial solicitation.").

Likewise, in *Robert Mauthe, M.D., P.C. v. Optum, Inc.*, the court rejected the plaintiff's argument that a fax that indirectly furthers a commercial transaction with a third party is an advertisement.  No. 17-1643, 2018 WL 3609012, at *6 (E.D. Pa. July 27, 2018).  In *Optum*, the

defendants sent a fax to the plaintiff, a health care provider, about the national database of health care providers they maintained and asked plaintiff to verify its information in the database. *Id.* at *2. The court concluded that the fax was not an advertisement because it merely declared the availability of defendants' database and provided the recipient with information about the database. *Id.* at *6. Because the fax was not an effort to promote the availability of the database nor an effort to sell the database to the plaintiff, it was not an advertisement, despite allegations that it was sent to further defendants' relationship with the third-party subscribers to the database. *Id.* at *5-6.

From the face of the Faxes, it is clear that their purpose was to inform medical services providers that they needed to refer patients with WellCare coverage to LabCorp for any in network laboratory services. There was nothing about these Faxes designed to generate profit. Indeed, as is explained above, LabCorp receives a fixed fee from WellCare for the testing services identified in the Faxes. LabCorp could not increase its "revenue and profit" by increasing the volume of those services; instead the reverse is true. To get around this reality, Plaintiff now alleges in its FAC that the purpose of the Faxes was to "generate revenue and profit for its laboratory services" by "(i) induc[ing] the recipients to recommend Defendants' lab services," "(ii) retain[ing] current customers (such as WellCare)", and "(iii) attract[ing] new customers." FAC ¶¶ 22 & 29. These new allegations fail to transform the Faxes into advertisements.

Any ancillary benefit that Defendants might receive from third parties or otherwise down the line does not transform the Faxes into unsolicited advertisements. First, the fact that the recipients of the Faxes, medical services providers, might be in a position to refer non-WellCare patients to LabCorp is too tenuous and speculative to support a TCPA claim. *See Janssen*, 2013

WL 486207, at *4 (finding link between prescribing doctor recipients and informational fax about medication too tenuous and speculative).   Second, the strengthening of LabCorp's relationship with third-party WellCare is not a valid commercial benefit for purposes of stating a colorable TCPA claim.   *See Optum*, 2018 WL 3609012, at *6 (strengthening relationship with third party not a commercial benefit).   Finally, Plaintiff's vague claim that the Faxes might commercially benefit LabCorp by "attract[ing] new customers" is far too remote of a commercial benefit.   *See Sandusky*, 788 F.3d at 225 (general positive effect on business by providing publicity too remote).

### E.   The Faxes Are Not a Pretext for a Larger Advertising Scheme

In an effort to get around the obvious informational nature of the Faxes, Plaintiff in its FAC attempts to plead the Faxes were a pretext for advertising.   These allegations are insufficient.   If a fax does not facially advertise the commercial availability or quality of any property, goods, or services, then it must be proven to be pretextual before TCPA liability can be imposed.   *See Spreemo*, 2019 WL 342715, at *2 (citing FCC Guidance, 71 Fed. Reg. at 25973).   Here, the Faxes are exactly what they appear to be on their faces—legitimate efforts by LabCorp to inform medical services providers about LabCorp's arrangement with WellCare.

The pretext analysis looks to whether a fax that is not facially an advertisement is actually part of a larger marketing campaign designed to sell property, goods or services.   *See Optum*, 2018 WL 3609012, at *7.   The classic example of a pretext for an advertisement is a fax announcing a free seminar where the seminar is really just a chance for the defendant to advertise its commercial products and services.   *Id.*   In *Janssen*, the court held that an informational fax was not a pretext because the defendants did not offer any free services or goods or invite any of the doctor recipients to a free informational seminar.   2013 WL 486207, at *7.   Rather, the fax just served as a notification about the reclassification of a drug for insurance purposes.   *Id.*

Similarly, in *Spreemo*, the fax at issue informed its recipients that the defendant had been designated by an insurance provider as its preferred diagnostic provider.  2019 WL 342715, at *2.  After concluding that the fax, on its face, was not an advertisement, the court considered whether the fax was a pretext for a broader advertising scheme.  *Id.* at *3.  The court concluded that it was not, because the defendant's contact information was provided to allow treating physicians to arrange for diagnostics tests for their patients, and not for the purpose of informing plaintiff how to contact the defendant to make a purchase of a service or good.  *Id.*

Plaintiff alleges in a conclusory fashion that the "Faxes also serve as a pretext to advertise Defendants' laboratory services in that the availability or quality of said services are repeatedly advertised in the Faxes in context of an announcement regarding [the Amendment]." FAC ¶ 30.  This allegation, however, conflates the primary purpose inquiry with the pretext analysis.  As explained *supra*, the primary purpose of the Faxes, on their faces, was to inform, rather than advertise.  With respect to pretext, LabCorp offers no free services designed to induce Plaintiff to purchase a product or services.  And, the contact information on the Faxes was included to "assist" medical services providers with the transition to LabCorp for WellCare accounts and to "answer[] any lab-related questions" (FAC, Ex. B), or to inform providers where to send their patients for services (FAC, Ex. A), not to inform Plaintiff how to contact LabCorp to make a purchase of a service or good.

The Faxes are exactly what they purport to be on their faces—informational communications.

## CONCLUSION

For the reasons set forth above, LabCorp respectfully requests that the Court dismiss the FAC with prejudice and grant any further relief the Court deems just and proper.

07/02/19

By:   /s/ Matthew C. Luzadder
      Florida Bar No. 11286
      KELLEY DRYE & WARREN LLP
      333 West Wacker Drive, 26th Fl.
      Chicago, Illinois 60606
      Telephone: (312) 857-7070
      Facsimile: (312) 857-7095
      mluzadder@kelleydrye.com

      OF COUNSEL:

      Robert Steiner (*pro hac vice*)
      New York Bar No. 2838621
      RSteiner@kelleydrye.com
      KELLEY DRYE & WARREN LLP
      101 Park Avenue
      New York, NY 10178
      Telephone: (212) 808-7965

      Lauri A. Mazzuchetti (*pro hac vice*)
      New Jersey Bar No. 038481999
      lmazzuchetti@kelleydrye.com
      Whitney M. Smith (*pro hac vice*)
      New Jersey Bar No. 035552006
      wsmith@kelleydrye.com
      KELLEY DRYE & WARREN LLP
      One Jefferson Road, 2nd Fl.
      Parsippany, New Jersey 07054
      Telephone: (973) 503-5900

      **ATTORNEYS FOR DEFENDANTS
      LABORATORY CORPORATION OF
      AMERICA HOLDINGS AND
      LABORATORY CORPORATION OF
      AMERICA**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing was filed and

served upon all counsel of record through the Court's CM/ECF Notice of Electronic Filing

system, pursuant to the Federal Rules of Civil Procedure, on this the 2nd day of July, 2019.

By:    /s/ Matthew C. Luzadder
         Matthew C. Luzadder